

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

March 25, 2021

**Via ECF**
The Honorable Judge Barbara C. Moses
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: **Polanco, et al. v. York Food Corp., et al.**
    **19-CV-8815 (BCM)**

Dear Judge Moses:

Our office represents the Viktoryia Polanco ("Polanco") and Saglara Orasheva ("Orasheva") (collectively, the "Plaintiffs") in the above-referenced matters and we submit this motion jointly with counsel for York Food Corp., Le Souk Inc., Marcus Andrews, Samir Jacob, and Lamia Funti (collectively, the "Defendants") seeking approval of the Settlement Agreement (attached hereto as **Exhibit 1**) ("the Agreement") as fair and reasonable. The terms of the Agreeent were reached only with the aid of a qualified and experienced wage-and-hour mediator, Ira Cure, Esq.

The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-336* as a basis for why the Court should approve the Agreement.

### I.     The Wolinsky Factors

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

**1. The Plaintiffs' range of possible recovery:**

**a. Plaintiffs' Position**

Plaintiffs are two former waitresses and bartenders who were employed at Defendants' bars, Falucka and Le Souk. In general, Plaintiffs alleged that they were not compensated proper minimum wage rates, overtime rates, and for spread of hours compensation in violation of the Fair

Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Plaintiffs also alleged that they were entitled to penalties under NYLL 195 for Defendants' failure to provide compliant wage notices and wage statements.

Polanco alleged that she was employed by Defendants from in or around 2009 until in or around June 2018. As the Complaint was filed in September 2019, the relevant statutory period under the NYLL for Plaintiffs' claims is September 2013 until June 2018. Polanco regularly worked five to six days per week for the Defendants period and approximately 11 hours per day for an average of 60.5 hours per week during the statutory period. Polanco further alleged that she was not paid any regular rate of pay and only received tips for her work performed. As such, Polanco alleged that she was entitled to full payment of the applicable minimum wage for each hour that she worked plus time-and-a-half the applicable minimum wage for each hour worked above 40 hours per week. Polanco's position is that Defendants did not compensate Polanco at all for any hour of work performed during her employment as they were not entitled to take a tip credit. Lastly, as Polanco worked eleven (11) hours per shift, she was entitled to an additional hour of pay pursuant to the New York Labor Law spread of hours provision.

Similarly, Orasheva, who joined this matter as an opt-in Plaintiff, alleged that she was employed by Defendants from in or around 2012 until in or around June 2018. From in or around September 2013 until in or around December 2014, Orasheva regularly worked five to six days per week for the Defendants period and approximately 11 hours per day for an average of 60.5 hours per week. However, from in or around January 2015 until in or around June 2018, Orasheva worked approximately 40 hours per week. Orasheva further alleged that she was not paid any regular rate of pay and only received tips for her work performed. As such, Orasheva alleged that she was entitled to full payment of the applicable minimum wage for each hour that she worked plus time-and-a-half the applicable minimum wage for each hour worked above 40 hours per week for the years 2013 and 2014. Orasheva's position is that Defendants did not compensate Orasheva at all for any hour of work performed during her employment as they were not entitled to take a tip credi. Lastly, as Orasheva worked eleven (11) hours per shift at the outset of the statutory period, she was entitled to an additional hour of pay pursuant to the New York Labor Law spread of hours provision during this time period.

In total, Plaintiffs alleged that they were owed in excess of $250,000.00 in unpaid minimum wages, overtime wages and spread of hours compensation. However, this amount assumed that Plaintiffs would be 100% successful in establishing all of their claims, including the exact number of hours worked each week, the exact dates of their employment, and establishing that Defendants would not be entitled to apply a tip credit. Although Plaintiffs were confident that they could establish their claims at the time of trial, Plaintiffs preferred a guaranteed settlement amount rather than risk a less favorable outcome at trial. Plaintiffs considered the records provided by Defendants' counsel, the strength of Defendants' witness testimony and their defenses in deciding to settle this matter for the agreed-upon amount of $95,000.00.

    b. **Defendants' Position**

Defendants deny Plaintiffs' allegations in their entirety. Defendants' position is that Plaintiffs were properly paid for all hours worked. Defendants' position is that they committed no wrongdoing and Plaintiffs were not owed any unpaid wages. Defendants dispute the alleged hours

worked by Plaintiffs, the alleged dates worked by Plaintiffs and their alleged compensation. Defendants agreed to this settlement solely to avoid the significant costs associated with litigating this case to a successful conclusion. Were this case to be litigated, Defendants are confident that Plaintiffs would not have been awarded any damages.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $95,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after multiple mediation sessions before qualified and experienced neutrals. The parties had genuine, bona fide disputes over the dates of Plaintiffs' employment, the hours worked by Plaintiffs and the pay received by Plaintiffs but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount. Moreover, the settlement amount falls squarely in the realistic, possible range of settlement and allows each Plaintiff to recover a substantial sum.

### 2. The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":

Although the discovery had closed in this matter, the settlement still enables the parties to avoid the anticipated burdens and expenses of a trial. Had the parties not reached a settlement, both sides faced significant time and expenses preparing all of the necessary pre-trial documents required by the Court. The parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted three or four days.

Each Plaintiff would have been required to take multiple days off from her current job and Plaintiffs would have incurred expenses preparing exhibits for trial and conducting the trial. The settlement gives both parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial.

### 3. The seriousness of litigation risks faced by the parties:

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiffs were confident that they could succeed on all their claims, Plaintiffs recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiffs also could have recovered less than agreed-upon settlement at trial. The seriousness of this risk favored the settlement for Plaintiffs.

Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys fees.

### 4. Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":

The parties engaged in extensive back-and-forth settlement talks for approximately one year. The parties attended a mediation through the SDNY Mediation Program on June 17, 2020 and attended a private mediation on February 5, 2021, the latter of which resulted in a settlement. In total, the parties engaged in numerous phone calls regarding settlement and spent approximately 8 hours negotiating at two separate mediations.

Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

The Agreement was the product of extensive arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts. The Agreement does not contain any confidentiality clauses, non-disparagement agreements, or releases of claims unrelated to the wage-and-hour claims asserted in this matter and comports with *Cheeks* and Second Circuit case law.

### 5. The possibility of fraud of collusion:

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

### II.   Attorneys' Fees and Distribution to Plaintiffs

Plaintiffs and Defendants agreed to a global settlement of $95,000.00. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $62,457.00. Each Plaintiff will receive an amount proportional to Plaintiffs' counsel's individualized calculations of damages, which factor in the length of each Plaintiff's employment and the hours worked by each Plaintiff. Each Plaintiff's share of the settlement proceeds also takes into account the individual defenses as to each. Plaintiff Polanco will recover $36,000.00 and Plaintiff Orasheva will recover $26,457.00 pursuant to the payment terms of the Agreement.

Plaintiffs' counsel respectfully requests $1,315.00 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $400.00
- the costs of service of the Summons and Complaint on all five Defendants: $560.00
- the cost of service through the Secretary of State on Corporate Defendant York Food Corp.: $40.00

- the cost of private mediation on February 5, 2021: $300.00
- postage fees: $15.00

Plaintiffs' counsel respectfully requests one-third of the settlement less the expenses ($93,685.00), or $31,228.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $32,543.00.

**Settlement Amount:** $95,000.00
**Attorneys' Expenses:** $1,315.00
**Settlement less Expenses:** $93,685.00
**Requested Attorneys' Fees:** $31,228.00 ($93,685.00 / 3)
**Total payable to Attorneys:** $32,543.00 ($31,228.00 + $1,315.00)
**Total payable to Plaintiffs:** $62,457.00 ($95,000.00 - $32,543.00)

Plaintiffs' attorneys and their clients have retainer agreements that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016). Copies of the retainer agreements are attached hereto as **Exhibit 2**.

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has litigated the matter for a year and a half. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

As Your Honor has also requested Plaintiffs' counsel's contemporaneous billing records, please see the records and attorney qualifications attached hereto as **Exhibit 3**. As explained in greater detail in the attached billing records, Plaintiffs' attorneys' fees as calculated using the lodestar method are **$22,425.00**. Plaintiffs' counsel spent a combined **65.5** attorney hours working on this matter from intake of Plaintiff Polanco through finalizing the Agreement for the Court's review and approval. Plaintiffs' counsel believes that the extensive work performed in this matter also supports the requested attorneys' fee award of one-third of the settlement.

### III.   Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of multiple mediations and a Settlement Conference before the Court, and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

_/s/_____
Roman Avshalumov, Esq.
James O'Donnell, Esq.
*Attorneys for Plaintiffs*